759 A.2d 738

Andre W. BREWSTER, et al.

v.

WOODHAVEN BUILDING AND DEVELOPMENT, INC., et al.

No. 82, Sept. Term, 1999.

Court of Appeals of Maryland.

Aug. 22, 2000.

Reconsideration Denied Oct. 6, 2000.

G. Macy Nelson, Towson, for Petitioners.

J. Michael Hannon (Thompson, O'Donnell, Markham, Norton & Hannon, Washington, DC); Samuel Y. Botts, Alan B. Robinson (Jordan, Keys, Jessamy & Botts, Greenbelt); Linda S. Wolf (Goodell, Devries, Leech & Gray, LLP, Baltimore); Elwood E. Swam, Hampstead, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

The issue in this case is whether a trial court's order transferring a civil case from one circuit court to another circuit court is a final judgment and thus immediately appealable. Petitioners in this case appealed the Court of Special Appeals' dismissal of their appeal from a transfer of venue, in a suit claiming injury to real property caused by Respondents' channeling of water into a stream that runs across the property. We shall hold that the transfer order is an immediately appealable final judgment, and we shall remand the case to the Court of Special Appeals to consider the merits of the appeal.

## I.

Petitioners, plaintiffs below, are Andre W. Brewster, three other owners of riparian land along the Piney Run in Baltimore County, and the Piney Run Preservation Association.

The Piney Run, according to the complaint, is a stream that begins at its headwaters near the border between Baltimore and Carroll counties, crosses northern Baltimore County, and joins the Western Run, which, in turn, flows to the Loch Raven Reservoir. Respondents, defendants below, are Woodhaven Building and Development, Inc. ("Woodhaven"), the Town of Hampstead, Maryland ("Hampstead"), the County Commissioners of Carroll County ("Carroll County"), The Fields Homeowners Association ("The Fields"), Hill/Reedy, Inc. ("Hill/Reedy"), and Carroll County employees Myron R. Frock and James E. Slater, Jr. ("Frock" and "Slater").

The complaint, filed in the Circuit Court for Baltimore County on October 10, 1998, alleges that Woodhaven built the Roberts Fields housing development and shopping center in Carroll County; that polluted storm water runoff from the development and shopping center are channeled into the Piney Run; that The Fields, as the homeowners' association for the Roberts Fields development, owns the holding ponds from which the runoff flows; that Hill/Reedy owns part of the shopping center; that Hampstead owns the storm drains that direct the Roberts Fields storm water into the Piney Run; and that Frock and Slater are responsible for reviewing storm water management plans for the vicinity of the headwaters of the Piney Run in Carroll County. The complaint also states that Carroll County owns the Hampstead Waste Water Treatment Plant, and that the plant discharges its effluent into the Piney Run. The complaint alleges that the water added to the stream by Respondents pollutes the stream and otherwise damages Petitioners' property; it asserts theories of liability under the headings of riparian rights, negligence, nuisance, trespass, and strict liability; and it seeks a permanent injunction and damages.

Woodhaven and Hill/Reedy answered the complaint. The Fields, Hampstead, Carroll County, Frock, and Slater moved to dismiss on grounds of improper venue, pursuant to Maryland Rule 2–322(a)(2). The Fields and Hampstead also moved, in the alternative, for transfer to a more convenient forum, pursuant to Maryland Rule 2–327(c). Conducting no

hearing, the Baltimore County trial judge granted the motion of The Fields, and issued an order on February 1, 1999, stating that "as a matter of convenience, this claim shall be transferred to the Circuit Court for Carroll County, Maryland or for proper venue. Vast majority of parties and witnesses are in Carroll Co. and this makes venue in that Co. much more convenient." Petitioners filed a motion for a hearing and for reconsideration of this ruling on February 4, 1999; their motion also points out that the court's order of February 1, 1999 did not rule on the motions of the other defendants. On February 5, 1999, the court denied Petitioners' motion, and issued an order on the docket sheet, stating as follows:

Obviously it was not the intention of the Court to have one defendant's case tried in Carroll Co. and the rest in Balto. Co. Thus the case was transferred as to all defendants and such Motions were granted. If for some reason convenience is the only reason to transfer as said in Order of 2/1/99 the case is transferred to Carroll Co. for that reason. For clarity, the entire case is moved to Carroll Co.

Petitioners noted a timely appeal to the Court of Special Appeals. The Fields moved to dismiss the appeal on the ground that a circuit court's order transferring a case to another circuit court is not immediately appealable because it is not a final judgment. The Court of Special Appeals granted the motion, in an order issued without opinion on June 3, 1999. We granted a writ of certiorari.

## II.

Petitioners argue that a trial court's order is immediately appealable if it is either a final judgment or a collateral order, and that the transfer order in this case was both. It is a final judgment, they argue, because it terminated the litigation in the court that issued it, the Circuit Court for Baltimore County. Petitioners argue that the transfer order in this case is appealable also because it satisfies the collateral order doctrine as set out in *Pittsburgh Corning v. James,* 353 Md. 657, 728 A.2d 210 (1999). We need not address their argu-

ment on this point because, as we explain below, the transfer order is immediately appealable because it is a final judgment.

Respondents initially argue that under Maryland Rule 2–602, an order that fails to dispose of the merits of a case is not a final judgment. Rule 2–602 provides, in pertinent part, that

an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment.

Because the order in the present case did not adjudicate the merits of the case, Respondents argue, it is not a final judgment under Rule 2–602. Respondents' main argument, however, is that although an order need not necessarily dispose of the merits of a case to be a final judgment, an order's effect of terminating a case in a particular court does not suffice to make the order a final judgment. Rather, they contend, the order must also deprive the party of the means to pursue the claims at issue in *any* court.

### III.

The final judgment rule[1] derives originally from the English common law principle that a writ of error ordinarily

---

1. The statutes concerning final judgments do not take us very far. They establish a right of appeal from a final judgment, but do not indicate which orders constitute final judgments. Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.) § 12–101(f) of the Courts and Judicial Proceedings Article states that

"Final judgment" means a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken.

Section 12–301 of the same Article provides, in pertinent part, that with exceptions not here relevant,

a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special,

would not lie until there had been a final disposition of an entire controversy. *See* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 15A FEDERAL PRACTICE AND PROCEDURE § 3906, at 264 (2d ed.1991). The core of the final judgment rule is thus that a trial court's decision disposing of the merits of the parties' claims may be appealed. On this the parties to this case do not disagree.

■ Respondents' initial argument, however, based on Maryland Rule 2–602, is that this core of the final judgment rule is really the entirety of the final judgment rule: If the order in question does not dispose of the parties' claims on the merits, it cannot be a final judgment. Despite the seemingly restrictive language of Rule 2–602, this is not the law. It is well settled that an order need not necessarily dispose of the merits of a case to be a final judgment. *See, e.g., Ferrell v. Benson,* 352 Md. 2, 6, 720 A.2d 583, 585 (1998) ("The notion ... that an order terminating the case in the circuit court is not final and appealable unless it settles the rights of the parties or concludes the cause of action, has consistently and expressly been rejected by this Court."); *Horsey v. Horsey,* 329 Md. 392, 401, 620 A.2d 305, 310 (1993) ("Contrary to the view expressed by the defendant ... a trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties."); *Wilde v. Swanson,* 314 Md. 80, 85, 548 A.2d 837, 839 (1988) ("An order of a circuit court ... [may be] a final judgment without any adjudication by the circuit court on the merits.").

## IV.

The dispute in this case centers on the second, narrower argument advanced by Respondents: If a judgment does not

---

limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

We have observed on many occasions that these provisions leave the elements of finality to be determined by the courts. *See, e.g., Anthony v. Clark,* 335 Md. 579, 587, 644 A.2d 1070, 1074 (1994); *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 664, 467 A.2d 483, 485 (1983).

settle the merits of the case, it must deny the party challenging it the ability to litigate the case in *any* forum, in order to be a final judgment. Petitioners' reply is that the judgment need only deny the party the ability to litigate the case in the particular court that has issued the judgment—the availability of another forum is irrelevant.

■ Our cases pertaining to this question show that an order is final if it terminates the litigation in a particular court. The cases stating the general rule that a judgment terminating litigation is a final judgment date from an early period. As early as 1835, we were already referring to the "well established rule" that

> no appeal can be prosecuted in this Court, until a decision has been had in the Court below, which is so far final, as to settle, and conclude the rights of the party involved in the action, or denying to the party the means of further prosecuting or defending the suit.

*Boteler & Belt v. State ex rel. Chew & Co.*, 7 G. & J. 109, 112–13 (Md.1835). Thus, it is well settled that an order denying a party the ability to pursue claims anywhere is an immediately appealable final order. We have often reiterated this point, applying it over an extraordinarily long historical period and an impressively wide range of subject matter. *See Grimberg v. Marth*, 338 Md. 546, 551–52, 659 A.2d 1287, 1290 (1995) (an orphans' court's denial of a motion for reconsideration of a judgment was an immediately appealable final judgment because it "has the effect of putting the parties out of court"); *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989) (a qualified domestic relations order, which left certain issues to be determined before a marital property division would be completed, was not a final judgment because it was not "so final as either to determine and conclude the rights involved or to deny the appellant the means of further prosecuting or defending his or her rights in the subject matter of the proceeding") (emphasis omitted); *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 91, 394 A.2d 801, 804 (1978) (a trial court's order denying a party's motion to disqualify opposing counsel

was not an immediately appealable final judgment because it did not "determine and conclude the rights involved" or "deny the appellant the means of further prosecuting or defending his rights in the subject matter of the proceeding"); *McCormick v. St. Francis de Sales Church*, 219 Md. 422, 426–27, 149 A.2d 768, 771 (1959) (a trial court's order granting defendant's motion to strike plaintiff's initial pleading is an immediately appealable final judgment because "[t]he effect of the court's ruling was to put the plaintiff out of court and deny her the means of further prosecuting her case against the moving parties"); *Jeffers v. State*, 203 Md. 227, 229, 100 A.2d 10, 11 (1953) (a trial court's order dismissing father's petition to dismiss mother's petition charging him with a child support obligation was not an immediately appealable final judgment, because "an order of the Circuit Court which does not settle and conclude the rights of the parties, and does not deny to the parties the means of further prosecuting or defending the action, is not a final judgment"); *In re Buckler Trusts*, 144 Md. 424, 427, 125 A. 177, 178 (1924) (a trial court's order striking the pleading of a would-be party attempting to intervene, on the ground that the would-be party had no interest in the suit, is not an immediately appealable final judgment, because the order did not prevent it from filing a separate action, and thus did not "deny to the party seeking redress ... the means of further prosecuting or defending his rights in the subject matter of the proceeding"); *Bragunier v. Penn*, 79 Md. 244, 245–46, 29 A. 12, 12 (1894) (a trial court's order dismissing plaintiff's petition was an immediately appealable final judgment "inasmuch as it denied the petitioner the means of further prosecuting his suit"); *Gittings v. State*, 33 Md. 458, 461, 462–63 (1871) (a trial court's order to submit to the jury the question of a defendant's residence for purposes of determining whether the court had personal jurisdiction was not immediately appealable because it was not "so far final as to settle and conclude the rights of the party involved in the action, or to deny to him the means of further prosecuting or defending the suit"); *Boteler & Belt*, 7 G. & J. at 113 (a trial court's order granting a motion for a new trial was not

immediately appealable because it neither settled the merits nor denied the party the means to litigate the suit).

We have also stated from an early period, however, the more specific proposition that a judgment terminating litigation *in a particular court* is a final judgment. In *Waverly Mutual v. Buck*, 64 Md. 338, 1 A. 561 (1885), the appellee borrower in a suit to foreclose a mortgage moved to dismiss the lender's appeal on the ground that the Circuit Court's order was not a final judgment. The Circuit Court had held that the lender was not entitled to foreclose. This Court overruled the motion to dismiss the appeal. We stated that

> it is now a well-settled principle, that the ruling of the court below must, in order to form the proper basis for an appeal, be so far final as to determine and conclude the rights involved in the action, or deny to the party who seeks redress by an appeal, "the means of further prosecuting or defending the suit" *in the Court of original jurisdiction. Boteler v. State*, 7 G. & J. 109; *Welch v. Davis*, 7 Gill, 364, *Green v. Hamilton*, 16 Md. [317]; *Hazlehurst v. Morris*, 28 Md. 67.

*Id.* at 342, 1 A. at 562 (emphasis added). The Circuit Court's order satisfied this definition, because it denied to the lender "its right to the relief invoked in its bill of complaint, and it cannot proceed a step further in the prosecution of its suit." *Id.* at 343, 1 A. at 563.

We have applied the principle that an order terminating litigation in a particular court is a final judgment in recent cases as well. In *Ferrell v. Benson*, 352 Md. 2, 720 A.2d 583 (1998), we considered whether an order transferring the action from the Circuit Court for Montgomery County to the District Court of Maryland was an appealable order.[2] We held that

---

**2.** There is no distinction, for finality purposes, between a circuit court order sending a case to the District Court and a circuit court order sending a case to another circuit court. The State's twenty-four circuit courts are entirely separate courts, as set forth in Article IV, § 20 of the Maryland Constitution. All circuit courts are *not* simply divisions of a single unified court which have "equivalent status and jurisdiction."

the order of the Circuit Court, "having the effect of terminating the case in the circuit court, is a final judgment." 352 Md. at 5, 720 A.2d at 585 (quoting *Montgomery County v. Revere Nat'l Corp.*, 341 Md. 366, 378, 671 A.2d 1, 7 (1996)). In *Carroll v. Housing Opportunities Com'n*, 306 Md. 515, 510 A.2d 540 (1986), we considered whether a circuit court's order denying Carroll a jury trial and remanding the case to the District Court is appealable. We held that it was final and appealable. Judge Eldridge, writing for the Court, said:

> In the present case, however, the circuit court's orders denied Mrs. Carroll all relief in the circuit court; they completely terminated the action in circuit court, remanding the case to the District Court for trial. Nothing was left to be done in the circuit court. Accordingly, the order was a final appealable judgment.

*Id.* at 520, 510 A.2d at 542. In *Wilde v. Swanson*, 314 Md. 80, 81, 548 A.2d 837, 837 (1988), we considered whether the dismissal of one of multiple defendants, based on improper venue, was a final judgment immediately appealable by the plaintiff when certified under Maryland Rule 2–602(b). We held that the dismissal order was an immediately appealable final judgment under these circumstances because "the plaintiffs were deprived of the means of further prosecuting their claim against [the dismissed defendant] *in that court*," even though they could still enforce their rights by initiating a suit against him in another court. *See id.* at 86–87, 548 A.2d at 840 (emphasis added). And in *Horsey v. Horsey*, 329 Md. 392, 620 A.2d 305 (1993), we held that the trial court's order to the parties to submit their dispute to arbitration was an immediately appealable final judgment, even though the parties were

Dissent at p. 627. Simply because the circuit courts may be of equivalent status and jurisdiction does not permit this Court to treat as a single entity what the Constitution has established as entirely separate courts.

In point of fact, there are jurisdictional differences among the circuit courts. Many public local laws confer jurisdiction upon the circuit court of one particular county or Baltimore City. A few public general laws do the same thing. *See e.g.*, Maryland Code (1997, 1999 Supp.) § 2–215(c) of the Insurance Code.

thereby afforded the opportunity to pursue their rights before the arbitrator. *See id.* at 403–04, 620 A.2d at 311. *See also Bunting v. State,* 312 Md. 472, 476, 540 A.2d 805, 806 (1988) ("Ordinarily a circuit court judgment is final only if it terminates the action in that court."); *Eastern Stainless Steel v. Nicholson,* 306 Md. 492, 501–02, 510 A.2d 248, 252–53 (1986) (a trial court's order remanding a case to an administrative agency is a final judgment because it terminates the proceedings in the court, even though the parties continue before the agency); *Brown v. Baer,* 291 Md. 377, 385–86, 435 A.2d 96, 100–01 (1981) (same); *Department of Public Safety v. LeVan,* 288 Md. 533, 543–44, 419 A.2d 1052, 1057 (1980) (same).

 Respondents' position suggests that certain of our cases stating the general proposition that an order terminating litigation is a final judgment conflict with the more specific proposition that an order terminating litigation in a particular court is a final judgment. The formulation in *Rohrbeck* and several of the other cases cited above, that the order is not final if it does not deny the party the means of "further prosecuting or defending his or her rights and interests in the *subject matter* of the proceeding," 318 Md. at 41, 566 A.2d at 773 (emphasis added), is susceptible of this interpretation, because it may be taken to suggest that if the party can pursue the subject matter before another tribunal, then the order is not final. *See also, e.g., Grimberg,* 338 Md. at 551, 659 A.2d at 1290; *Schlossberg v. Schlossberg,* 275 Md. 600, 612, 343 A.2d 234, 242 (1975); *In re Buckler Trusts,* 144 Md. at 427, 125 A. at 178. This notion is without merit, however. We have never explicitly stated that an inability to pursue the substance of a claim in any forum is a requirement of finality, and we reject this notion now. An order putting the appellant out of every court is simply *one type* of instance of a final judgment. This proposition is entirely consistent with the proposition that an order putting an appellant out of a particular court is also a final judgment. It follows that an order transferring a case from one circuit court to another, for proper venue or for a more convenient forum, and thereby terminating the litigation in the transferring court, is a final

judgment and thus immediately appealable. At the same time, an order denying a motion to transfer is not an immediately appealable final judgment, because the litigation may continue in the court issuing the order.

## V.

Consideration of some of the underlying purposes of the final judgment rule supports our conclusion. We have often stated that the purpose of the final judgment rule is to avoid piecemeal appeals, *see, e.g., Harris v. David S. Harris, P.A.,* 310 Md. 310, 314–15, 529 A.2d 356, 358 (1987), and the reason for avoiding piecemeal appeals is the promotion of judicial efficiency. One aspect of judicial efficiency that concerns us here is interruption of the trial court process by repeated application to appellate courts.

> Postponing review until the final judgment, or minimizing the number of occasions for interlocutory appeal, also is important to avoid interference with the trial process.... Repeated interruptions of the trial court process ... may require wasteful losses of familiarity with the case by court and perhaps counsel as well.

WRIGHT, MILLER & COOPER, *supra,* § 3907, at 277.

This sort of interruption cannot occur in a case in which a motion to transfer has been granted. In the transferring court, there are no longer any proceedings to interrupt, for the proceedings have been terminated. In the receiving court, the proceedings cannot be interrupted, because they have not yet begun. The case is otherwise when a motion to transfer is denied; to allow immediate appeal then would interrupt an ongoing trial court process. This difference justifies the distinction we make in allowing immediate appeal from the granting of a transfer order and disallowing immediate appeal from the denial of a transfer order.

 It is also instructive to compare the rules on the appealability of decisions on motions to *transfer* due to improper venue or inconvenient forum with the rules on the

appealability of decisions on motions to *dismiss* for improper venue or inconvenient forum. An order granting such dismissal is immediately appealable, while an order denying it is not, *see Pittsburgh Corning v. James,* 353 Md. 657, 728 A.2d 210 (1999); *Wilde v. Swanson,* 314 Md. 80, 86–87, 548 A.2d 837, 840 (1988). This approach is justified by the same considerations we have just mentioned as justifying a like approach to transfer orders. With both a transfer order and a dismissal order, the party challenging the order is put out of the particular court that grants the order, while being left free to pursue the case in another court. In both situations, there is no danger of interrupting an ongoing trial court process. Conversely, when either a transfer motion or a dismissal motion is denied, the party challenging the court's order is not put out of court, and to permit an immediate appeal would be to interrupt the trial court's process.

The two situations—transfer and dismissal—should therefore be treated alike. The allowance of transfers in our rules was not intended to create an exception to the principles for determining whether an order is final and appealable. It would be illogical to conclude that, on the one hand, the dismissal for lack of venue in *Wilde,* 314 Md. at 87, 548 A.2d at 840, was properly entered as a final judgment because the dismissal deprived the plaintiffs "of the means of further prosecuting their claim against [the defendant] in that court," but, on the other hand, if the plaintiffs' case had been transferred out of the original circuit court to another circuit court, the transfer order would have lacked finality.

## VI.

Our holding that an order granting a transfer of venue from one circuit court to another is immediately appealable permits the party who opposed the order either to file an appeal from the order within 30 days of its entry, or to wait until the litigation has been completed in the transferee court and appeal from that court's final judgment on the ground

that the case should not have been transferred.[3] A decision to forego the immediate appeal does not prevent a party from raising the propriety of the transfer in the later appeal.[4] In

**3.** The dissent argues that our holding is inconsistent with *Parrott v. State*, 301 Md. 411, 483 A.2d 68 (1984) and suggests that our decision "may ... put into jeopardy our holding in *Parrott*." The dissent's concern about *Parrott* is ill-founded. In that case, no issue was raised, or even discussed, as to whether the circuit court order was a final, appealable judgment under the principle that an order terminating a case in a particular court is final and appealable. No case involving this principle was cited in *Parrott*. The parties simply proceeded upon the assumption that the order was interlocutory. The only two issues in *Parrott* were the "constitutional right" doctrine and the "collateral order" doctrine. Judge Rodowsky, writing for the Court, set forth the issues and arguments as follows:

> Parrott took the position that an interlocutory appeal lies in this case for either of two reasons. First, Maryland cases view certain removal orders as within a class of orders which grant or deny an absolute constitutional right and are on that ground immediately appealable. Secondly, the issue in this case meets the collateral order exception to the final judgment rule.
>
> The State recognized that its position of nonappealability conflicts with certain earlier cases. The State submitted, however, that later decisions which look to the collateral order doctrine had eroded the constitutional right approach to appealability and that the subject appeal fails the collateral order test.

301 Md. at 414, 483 A.2d at 69. A case constitutes no precedent with respect to an issue which was not raised and which was not considered by the court. *See e.g., State v. Griffiths*, 338 Md. 485, 496, 506, 659 A.2d 876, 882, 887 (1995).

In addition, the law concerning finality and appealability of judgments in criminal cases is different, in many respects, from the law applicable to civil cases. For example, a final judgment (including sentence) on single count in an indictment can be appealed even though there is no final judgment on another count in the same indictment charging a different offense. Moreover, in a civil action, both the plaintiff and the defendant enjoy rights concerning venue. Both parties enjoy the privilege of transferring a case to a venue which either one can show to be more convenient. In a criminal case, however, the prosecution is constrained in a manner that is not at all analogous to the venue selection by a civil plaintiff. Article 20 of the Maryland Declaration of Rights requires that criminal cases be brought where the crime occurred. Thus, it is usually the defendant who seeks a transfer; such defendant would have little cause to appeal a transfer order which he or she sought. The State, having much less "venue" rights than a civil plaintiff, would ordinarily not attempt to appeal a transfer order. Thus, in criminal cases, there is much less need for an immediate appeal of transfer orders.

**4.** The dissent's view that our decision is inconsistent with our holding in *Leung v. Nunes*, 354 Md. 217, 729 A.2d 956 (1999) ignores the

this respect, our holding is consistent with a large body of our case law.

We have often permitted an appeal from a judgment ultimately disposing of a case based on an issue that could have been, but was not, made the basis of an earlier appeal. Probably the circumstance closest to the present case is when a party first contends before the trial court that it should not be ordered to arbitrate, is ordered to arbitrate, does not take an immediate appeal from that order terminating the proceeding in the trial court, submits to arbitration, and appeals the issue only after an arbitration award has been confirmed by the trial court in a new proceeding. In *Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 667 A.2d 649 (1995), the plaintiffs sued a corporation and its president individually for, *inter alia,* breach of contract and negligence. The Circuit Court for Cecil County granted the corporation's motion to compel arbitration pursuant to an arbitration agreement in the contract in dispute. The plaintiffs then moved in the Circuit Court to compel the president to arbitrate. He opposed their motion on the ground that he was not a party to the arbitration agreement or the underlying contract. The court, ruling that the president was bound by the agreement, ordered him to arbitrate. This was a final appealable judgment terminating the case in the Circuit Court. *See Horsey v. Horsey,* 329 Md. 392, 401–02, 620 A.2d 305, 310 (1993), and cases there cited. The president in *Testerman,* however, did not take an immediate appeal but waited until the termination of arbitration and the arbitrator's award. In a new circuit court action to confirm the award, the court entered final judgment in favor of the plaintiffs. Only at this point did the president appeal and raise the issue before an appellate court that, because he was not a party to the arbitration agreement or the underlying contract, he should not have been required to submit to arbitration and was not bound by the arbitration

---

proposition that a party may elect to appeal within thirty days of the entry of the order or wait until the litigation has been completed.

award. This Court agreed with the president, holding that, although the president's tort liability could be tried in court, the trial judge could not force him to litigate his liability through arbitration. We did not penalize the president for failing to appeal immediately the trial court's order to arbitrate, despite the fact that this order was appealable as a final judgment.

Similarly, in *Board of Educ. for Dorchester County v. Hubbard*, 305 Md. 774, 783–85, 506 A.2d 625, 629–30 (1986), teachers sought to arbitrate their grievances with the Garrett County Board of Education.[5] The Board filed in the Circuit Court for Garrett County a declaratory judgment action seeking a stay of arbitration and a declaration that the issue in dispute was not arbitrable under collective bargaining agreements and state law. The Circuit Court ordered the Board to proceed with arbitration, and the Board took no appeal from that final judgment terminating the case. Subsequent to the àrbitrator's decision a few months later, the Board brought a new action in the Circuit Court to vacate the arbitrator's decision. After the petition was denied, the Board appealed on the sole ground that the dispute between it and the teachers was not properly the subject of arbitration. We entertained the Board's appeal, despite the fact that the Board could have appealed and raised the very same issue immediately after the Circuit Court's final order in the declaratory judgment action to proceed with arbitration. Again, we did not penalize a party for failing to appeal an issue at the earliest possible moment. *Cf. In re Sealed Case*, 121 F.3d 729, 760 (D.C.Cir.1997) (although "a President is allowed to immediately appeal an order requiring production of subpoenaed materials . . . . we believe that the White House should not be penalized because it waited until the district court issued its final ruling").

---

5. The appeal, although reported as *Board of Educ. for Dorchester County v. Hubbard*, involved two separate cases, one from Dorchester County and one from Garrett County.

■ There are many other situations when a party foregoes the right to an earlier appeal. but may still seek appellate review when the judgment becomes final. A party may seek appellate review of issues that were appealable under the collateral order doctrine. *See Pulley v. State,* 287 Md. 406, 419, 412 A.2d 1244, 1251 (1980) (holding that if an order is appealable as a final judgment[6] under the collateral order doctrine, a party's failure to appeal or to perfect an appeal from that order does not "cause a forfeiture of a defendant's right to a review of the ... ruling" in an appeal from a later order terminating the case on its merits). *See also Carbaugh v. State,* 294 Md. 323, 328, 449 A.2d 1153, 1156 (1982) (permitting defendant with right to an immediate appeal under collateral order doctrine to forego immediate appeal and raise issue after final judgment); *Vogel v. Grant,* 300 Md. 690, 701, 481 A.2d 186, 191 (1984) (allowing appeal after entry of final judgment even though order was immediately appealable under the collateral order doctrine).

■ A party may forego the right to an immediate appeal of an injunction and raise the same issue in a later appeal. *See Save–Mor Drugs v. Upjohn Co.,* 225 Md. 187, 194, 170 A.2d 223, 227 (1961) (holding that "[t]he appellant, Save–Mor, could have appealed from the order granting the interlocutory injunction, but it was not bound to do so, and it could bring up for review the questions which it might have so presented on appeal from the final decree"). *See also, e.g., Rocks v. Brosius,* 241 Md. 612, 647–48, 217 A.2d 531, 551 (1966); *Washington Cleaners v. Albrecht,* 157 Md. 389, 401, 146 A. 233, 237 (1929); *Lippy v. Masonheimer,* 9 Md. 310, 315 (1856). Still another situation in which a party has a right to seek appellate review of a judgment deciding an issue, but may forego that right and later raise the issue by seeking appellate review of a subsequent judgment, involves review of

---

**6.** The collateral order doctrine *"treats as final* and appealable a limited class of orders which do not terminate the litigation in the trial court." *Public Serv. Com'n v. Patuxent Valley Conservation League,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984) (emphasis added).

judgments by intermediate appellate courts remanding cases. *See Public Serv. Com'n v. Maryland People's Counsel,* 309 Md. 1, 522 A.2d 369 (1987) (holding that the law of the case doctrine does not preclude the Court of Appeals from deciding an issue on review of a second judgment by the Court of Special Appeals, where the first judgment of the Court of Special Appeals on the issue was not appealed by the defendant). *See also Loveday v. State,* 296 Md. 226, 462 A.2d 58 (1983); *Houghton v. County Com'rs of Kent County,* 305 Md. 407, 414, 504 A.2d 1145, 1149 (1986).

▪ Finally, a party may forego an appeal from a final judgment terminating a case in a particular court, but subsequently raise the issue in a separate proceeding in declaratory judgment actions to resolve questions of insurance liability coverage when the insured is a defendant in a tort suit. *See Allstate Ins. Co. v. Atwood,* 319 Md. 247, 255, 572 A.2d 154, 158 (1990) (holding an insurer's failure to bring a declaratory judgment action, "or to take an appeal from the dismissal of such an action without a declaration, will not operate as an estoppel or a waiver against the insurer"). In all these situations, an appeal was taken when the judgment was final, raising an issue on which an earlier appeal was permissible but not taken. Our holding today is consistent with these cases.

▪ No principle or rule of law stands in the way of permitting a party to choose between immediately appealing the transfer order and waiting until the end of the case to litigate this issue further. For instance, the fact that more than 30 days might have passed since the transfer order was entered does not prevent an appeal from the ultimate disposition of the case based on the argument that the transfer was improper. It is true that "[t]he requirement ... that an order of appeal be filed within thirty days of a final judgment is jurisdictional; if the requirement is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed." *Houghton,* 305 Md. at 413, 504 A.2d at 1148. But an appeal from the judgment ultimately disposing of the case is not an appeal from the order that is more than 30 days old,

namely the transfer order. The propriety of the transfer is merely the ground on which this appeal is taken. The amount of time that passes from the date of the transfer order is only relevant to how long the adverse party has to appeal that order.

■ Nor does the doctrine of *res judicata* mean that a decision to forego appeal of the transfer order has the effect of precluding further litigation of the issue in the appeal from the ultimate judgment. While ordinarily the failure to appeal from an appealable order precludes later appellate review of that order under the doctrine of *res judicata,* this is not a universal or absolute rule. The doctrine of *res judicata* is grounded in the public policy against repetitive litigation, *see Pat Perusse Realty v. Lingo,* 249 Md. 33, 45, 238 A.2d 100, 108 (1968); but there are occasions where a final judgment will not be given preclusive effect. *See e.g., Montgomery County v. Revere Nat'l Corp.,* 341 Md. 366, 382, 671 A.2d 1, 9 (1996) (stating that "fundamental public policy of a state may sometimes require that a final consent judgment be vacated or not given preclusive effect").

■ In conclusion, we note that a review of this Court's opinions over the past forty or fifty years will show that no one issue has been the subject of more opinions than the question of whether a trial court order is appealable. The bar has had more difficulty determining finality and appealability than with perhaps any other issue. Nonetheless, there exists one principle of appealability to which this Court has continuously adhered, one that is simple and understandable. An order which terminates the proceeding in a particular court is final and appealable.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS DISMISSING THE APPEAL REVERSED. CASE REMANDED TO THAT COURT FOR CONSIDERATION OF THE MERITS OF THE APPEAL. COSTS TO ABIDE THE RESULT IN THAT COURT.*

Dissenting opinion by WILNER, J, in which RODOWSKY, J. and CATHELL, J., join.

WILNER, Judge, dissenting:

The Court today holds that an order of a Circuit Court, entered under Maryland Rule 2–327(b) or (c), that transfers a case to another Circuit Court having equivalent jurisdiction but better (or exclusive) venue constitutes a final judgment that is immediately appealable. To reach that result, the Court misinterprets some cases, pays no heed to others, and comes to the extraordinary conclusion that there can be more than one final judgment in a single case. The Court's decision is flat-out inconsistent with *Parrott v. State,* 301 Md. 411, 483 A.2d 68 (1984), notwithstanding the majority's rather strained and unconvincing attempt to distinguish that case and, but for this new notion that there can be multiple final judgments, is also inconsistent with our unanimous holding last year in *Leung v. Nunes,* 354 Md. 217, 729 A.2d 956 (1999). With respect, I dissent.

The Court recognizes the long-established rule in this State, articulated at least as early as *Boteler & Belt v. State,* 7 G. & J. 109, 113 (1835) that

"no appeal can be prosecuted in this Court, until a decision has been had in the Court below, which is so far final, as to settle, and conclude the rights of the party involved in the action, or denying to the party the means of further prosecuting or defending the suit."

*See also Popham v. State,* 333 Md. 136, 142, 634 A.2d 28, 31 (1993), confirming that principle in nearly identical language (to constitute a final judgment, the order must be "so far final as to determine and conclude the rights involved in the action, or to deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding").

The Court then proceeds, however, to construe the alternative requirement that the lower court decision "deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding" as being satisfied when the order removes the case, on venue grounds, from one Circuit

Court to another. As a basis for that construction, it states that "[w]e have applied the principle that an order terminating litigation *in a particular court* is a final judgment" (emphasis added), citing as authority for that proposition cases treating as final judgments orders of a Circuit Court transferring an action to the District Court of Maryland, or dismissing an action seeking judicial review of an administrative agency decision and remanding the case to the agency, or requiring parties to arbitrate a dispute otherwise triable in the court. Those cases, however, do not support the notion that the transfer of a case, for venue purposes, from one Circuit Court to another constitutes a final, appealable judgment.

The Court first relies on *Ferrell v. Benson*, 352 Md. 2, 720 A.2d 583 (1998). In that case, the Circuit Court for Montgomery County transferred a tort case to the District Court on the ground that the amount in controversy did not exceed $2,500, that the case was therefore within the exclusive jurisdiction of the District Court, and that the Circuit Court had no jurisdiction to try it. That order, we held, constituted a final judgment because it "terminated the case in the circuit court." *Id.* at 5, 720 A.2d 583, 720 A.2d at 585 (quoting from *Montgomery County v. Revere*, 341 Md. 366, 378, 671 A.2d 1, 7 (1996)). We never said that the order was final because it terminated the case in the Circuit Court for Montgomery County. It was final because the case was terminated "in the circuit court." The crucial point was that, due to the court's jurisdictional determination, the plaintiff lost her ability to litigate in a Circuit Court—any Circuit Court—where she had the right of jury trial, the right to conduct discovery, and the right of direct appeal to the Court of Special Appeals. The termination of her action in a Circuit Court had more than mere logistical consequences. The same situation pertained in *Carroll v. Housing Opportunities Comm'n*, 306 Md. 515, 510 A.2d 540 (1986), also cited by the Court; there, too, we observed that the order transferring the case to the District Court "completely terminated the action in circuit court." *Id.* at 520, 510 A.2d at 542. As in *Ferrell*, the plaintiff lost her right of jury trial, of discovery, and of appeal to the Court of Special Appeals.

The same principle was involved in the cases remanding an action to an administrative agency or dismissing an action in favor of arbitration. The rationale for regarding an order remanding an action to an administrative agency as a final judgment was lucidly explained in *Schultz v. Pritts*, 291 Md. 1, 6, 432 A.2d 1319, 1322–23 (1981):

> "When a court remands a proceeding to an administrative agency, the matter reverts to the processes of the agency, and there is nothing further for the court to do. *Such an order is an appealable final order because it terminates the judicial proceeding and denies the parties means of further prosecuting or defending their rights in the judicial proceeding.*"

(Emphasis added). *See also Eastern Stainless Steel v. Nicholson*, 306 Md. 492, 501–02, 510 A.2d 248, 252–53 (1986).

That is also the rationale for regarding orders to arbitrate as final judgments. In *Horsey v. Horsey*, 329 Md. 392, 620 A.2d 305 (1993), the plaintiff filed an action for specific enforcement of a marital separation agreement, an agreement that contained an arbitration clause. The court construed the agreement and directed that the plaintiff pursue her claim for alimony under the agreement through arbitration. Citing *Houghton v. County Comm'rs of Kent Co.*, 305 Md. 407, 412, 504 A.2d 1145, 1148 (1986), for the proposition that an order that has "the effect of putting the parties out of court ... is a final appealable order," we concluded:

> "A circuit court's order to arbitrate the entire dispute before the court does deprive the plaintiff of the means, in that case before the trial court, of enforcing the rights claimed. The order effectively terminates that particular case before the trial court. Thus, the order would clearly seem to be final and appealable under the above cited cases."

Those cases, and others like them, are entirely consonant with the general rule regarding final judgments and do not support the proposition adopted by the Court in this case. We are not dealing here with plaintiffs who have been denied

a judicial remedy, as is the situation when cases are remanded to administrative agencies or dismissed in favor of arbitration. Nor, as is the situation with a remand to the District Court, are we dealing with plaintiffs who have been prevented from trying their case in a Circuit Court, of having a jury trial with respect to issues triable before a jury, of preserving their right of direct appeal to the Court of Special Appeals, of having all of the discovery and motion practice available in a circuit court. The only effect of the order under consideration is that the plaintiffs must try their case in Carroll County rather than in Baltimore County, in a court of equivalent status and jurisdiction. This is not at all like the situations in *Ferrell, Carroll, Schultz,* or *Horsey.*

The Court cites *Wilde v. Swanson,* 314 Md. 80, 548 A.2d 837 (1988), as authority for regarding a venue transfer order as a final judgment, but that case stands for no such proposition. Indeed, it demonstrates the opposite. In *Wilde,* the Circuit Court dismissed the action against one of several defendants on the ground that, as to that defendant, there was a lack of venue. The court then entered that order of dismissal as a final judgment under Maryland Rule 2–602. We agreed that the order was properly entered as a final judgment under the rule, but only because the effect of the order dismissing the defendant deprived the plaintiffs "of the means of further prosecuting their claim against him in that court." What the Court here neglects to consider and give effect to is that the action against the one defendant was not transferred to another Circuit Court; it was dismissed. If the plaintiffs wanted judicial relief against that defendant, they would have been forced to file a new action. *Wilde* points out, quite clearly, the distinction between a *dismissal* for lack of venue and the transfer of an action to another circuit court. The whole purpose of allowing a transfer, rather than requiring a dismissal, was to avoid the consequence of what occurred in *Wilde*—to keep the action alive in every respect, but simply transfer it for trial to a court having proper venue.

In *Leung v. Nunes, supra,* the Circuit Court for Baltimore City transferred a tort case, under Rule 2–327(c), to the

Circuit Court for Howard County. No appeal was taken from that order, and the case was tried on its merits in Howard County. Following the entry of defendants' judgments by the Circuit Court for Howard County, far longer than 30 days after the transfer order, the plaintiff noted an appeal, from those judgments, complaining only about the transfer order. The Court of Special Appeals reviewed the merits of that order and reversed the Howard County judgments, holding that the case was erroneously transferred. Despite what would clearly be a jurisdictional defect if the transfer order were to be regarded as a final judgment, we granted *certiorari* to review the merits of the transfer order, and we affirmed the judgment of the Court of Special Appeals.

The only basis upon which we could have reviewed the transfer order in that case was to treat the judgment entered in the Circuit Court for Howard County as the final judgment in the case and to regard the transfer order as an interlocutory order reviewable on appeal from the later-entered final judgment. Under what, up to now, has been our clear and routine jurisprudence, if a transfer order constitutes a final judgment, as the Court now holds, the transfer order in *Leung* would have been unreviewable, for, as noted (1) no appeal had been taken from that order, and (2) the only appeal that *was* taken was filed long after the 30 days allowed for noting an appeal. We would have lacked substantive jurisdiction to enter the mandate that we entered.

The Court's current belief that a venue transfer order constitutes a final, immediately appealable judgment is also inconsistent with our holding in *Parrott v. State, supra,* 301 Md. 411, 483 A.2d 68, that an order removing a case from one Circuit Court to another under Article IV, § 8 of the Maryland Constitution is an interlocutory order that is not immediately appealable. This Court has always regarded removal orders under Article IV, § 8 as interlocutory in nature, but, until *Parrott,* we had entertained immediate appeals from them on the theory that any order that denied an absolute Constitutional right was immediately appealable. *See Smith*

*v. Fredericktown Bank*, 258 Md. 141, 265 A.2d 236 (1970). In *Parrott*, we abrogated that broad doctrine of immediate appealability, and with that abrogation went the right of immediate appeal from removal orders: "Because the order of removal appealed from in this case *is not a final judgment* and does not fall within the collateral order doctrine exception, we dismissed Parrott's appeal." *Parrott, supra*, 301 Md. at 426, 483 A.2d at 75 (emphasis added). In direct defiance of *Parrott*, and all of the removal cases preceding *Parrott*, the majority regards a transfer order from one Circuit Court to another as a final judgment, not an interlocutory order.[1]

To avoid the obvious consequence of *Leung*, the majority holds that a party opposing a transfer order may either appeal

---

1. In a footnote, the majority attempts to dismiss *Parrott* on the alternative grounds that (1) the issue of whether the transfer order in that case constituted a final judgment was never raised or decided, and (2) in any event, there are differences between the finality of judgments in criminal and civil cases. I shall respond in a footnote. The first basis is perplexing. As just noted, we dismissed the appeal in *Parrott* "[b]ecause the order or removal appealed from in this case is not a final judgment and does not fall within the collateral order doctrine exception." How is that not a holding regarding an issue in the case? It is true that Parrott claimed that the order was interlocutorily appealable, and for good reason, for, up to that point, we had consistently regarded such orders as interlocutory, and appealable as such. The point is, however, that, notwithstanding our determination in *Parrott* that we would *no longer regard removal orders as immediately appealable* interlocutory orders, we would not have dismissed the appeal if we believed that the order before us constituted an appealable final judgment. We would not have played so fast and loose with a jurisdictional issue in a criminal case. That would have been manifestly unjust. We dismissed the appeal because we concluded that the removal order was neither a final judgment nor an appealable interlocutory order. That is what we plainly said, and that is what we plainly did.

The second basis offered by the majority is equally mysterious. What difference does it make that, in a criminal case, a judgment on one count of an indictment or information may be appealed even though there is no judgment yet entered on another count? All that signifies is that we have not, as of yet, applied a common law equivalent of Maryland Rule 2–602 to criminal cases. It says absolutely nothing about the nature and effect of a removal order. If removal on venue grounds does not constitute a final judgment in a criminal case, even though it terminates the action in the transferring Circuit Court, how can such a removal constitute a final judgment in a civil case on the ground that it terminates the action in the transferring court?

immediately or wait until the litigation has been completed in the transferee court "and appeal from that court's final judgment on the ground that the case should not have been transferred." It says that "[w]e have often permitted an appeal from a judgment ultimately disposing of a case based on an issue that could have been, but was not, made the basis of an earlier appeal," citing cases involving orders to arbitrate. Once again, it has failed to recognize a critical distinction between those cases and this one.

In *Testerman Co. v. Buck*, 340 Md. 569, 667 A.2d 649 (1995), a plaintiff who had filed suit against a contractor for damages was ordered to arbitrate the dispute in accordance with an arbitration clause in the contract. He did not appeal from that order but proceeded with the arbitration, which ended with an award against him. He apparently appealed from a subsequent order of the Circuit Court confirming the award, complaining that (1) he was not a party to the agreement to arbitrate, and (2) the arbitrator had no authority to award counsel fees. No issue was raised in that appeal over Testerman's right to appellate review of the judgment confirming the arbitration award or whether he had waived his right to raise the first issue by not appealing from the order to arbitrate, and no comment appears in the Court's opinion with regard to either matter. Nonetheless, because the first order, requiring the parties to arbitrate, could have been appealed as a final judgment, the Court now treats that case as authority for the proposition that there can be two (or more) final judgments in the same action.

*Testerman* is a weak reed on which to rely. An order to arbitrate may be entered in three contexts under the Uniform Arbitration Act. Maryland Code, § 3–207 of the Courts and Judicial Proceedings. Article, allows a party to an arbitration agreement to file a petition to compel arbitration if the other party to the agreement refuses to arbitrate. Section 3–208 permits a person, threatened with arbitration, to petition the court to stay the arbitration on the ground that the person never agreed to arbitrate the matter. In either situation, if the court determines that an agreement to arbitrate exists, it

must order arbitration. Such an order is immediately appealable, because it exhausts the court's jurisdiction. There is nothing left in the court—*any* court. The party has been deprived of his, her, or its alleged right to a judicial resolution. *Horsey v. Horsey, supra,* 329 Md. 392, 620 A.2d 305. A third context, under § 3–209, is where the court already has litigation pending before it but, upon a determination that one or more (but less than all) of the issues in the litigation is subject to arbitration, stays the litigation so that those particular issues may be submitted to arbitration. Whether that kind of order constitutes an immediately appealable final judgment is another matter, upon which we have not as yet opined. *Testerman* apparently involved an order entered under either § 3–207 or § 3–208; the judicial proceeding was ended when the order was entered.

Sections 3–223, 3–224, and 3–227 of the Courts and Judicial Proceedings Article permit parties who have been through arbitration to file certain post-award petitions in the Circuit Court—to modify or correct an award (§ 3–223), to vacate an award (§ 3–224), or to confirm an award (§ 3–227). Unless the matter proceeded to arbitration pursuant to an order entered under § 3–209, this would be a new action in the Circuit Court, seeking only the particular relief allowed under the respective statute, and any final order entered by the court in that action would constitute the single, final, appealable judgment in that action.[2] In viewing *Testerman* and similar cases (*see Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 506 A.2d 625 (1986)) as involving two final judgments, either of which can be appealed, the Court overlooks the plain fact that, in those arbitration settings, there are not two judgments in the same case but two separate

---

**2.** It may be that, if a party moved to stay arbitration under § 3–208 or objected to a petition to order arbitration under § 3–207 on the ground that he, she, or it never agreed to arbitrate the matter and failed to appeal an adverse determination in that proceeding, principles of *res judicata* or collateral estoppel would preclude an attempt to raise that issue again in a petition to vacate an award; that is a matter on which we have yet to opine. Any such bar, however, if one did exist, would not affect the appealability of the order denying post-award relief.

cases, seeking different relief. That is clearly *not* the situation when a case is transferred for venue purposes. The case filed in the transferor court is simply tried in the transferee court, subject to all of the same rules of substance and procedure that would have applied in the transferor court. There is no new action; the parties do not start over, but simply pick up in the second court where they were in the first one.

Finally, the Court finds some succor in the fact that a party who *may* appeal immediately from an interlocutory order under the collateral order doctrine or under § 12–303 of the Courts and Judicial Proceedings Article may choose not to appeal at that time and appeal later from the final judgment. The critical—and obvious—distinction is that the first order is, indeed, an interlocutory one. Although the law allows an immediate appeal from certain kinds of interlocutory orders, its general preference is to have but one appeal at the end, which is why, subject to ordinary rules of waiver or mootness, it permits a party appealing from the final judgment to contest interlocutory orders entered during the action. With but one possible contextual exception, we have never endorsed the notion of there being more than one final judgment in a single action. The only potential exception is those actions in which an equity court has a continuing jurisdiction to entertain and enter final orders in discrete proceedings, an example being a divorce or receivership action. The holding today, that there can be more than one final judgment in this kind of case, is unprecedented.

In regarding the transfer order as a final judgment, the Court overlooks two important aspects of such an order that clearly demonstrate its interlocutory nature. If the party opposing the transfer prevails in the transferee court, the issue of the transfer will effectively become moot, and the prospect of an issue being made moot by further proceedings in the action is, or at least should be, one of the critical factors in determining whether the order generating that issue is interlocutory, rather than final. On the other hand, if, as in *Leung,* that party loses in the transferee court, it can raise the

transfer issue, along with any other issues it chooses to raise, in an appeal from what is clearly the final judgment. In either event, there is simply no need to have the transfer order immediately appealable and certainly no reason to regard such an order as a final judgment simply in order to provide a ground for immediate appealability.

There is no logical basis for the Court's holding. It can serve no useful purpose. Its only effects will be deleterious. It will be used to create delay in the trial of cases that are transferred under Rule 2–327, as parties opposing the transfer, by immediately appealing, can put the case "on ice" for a year or more. Cases will linger dormant on the docket as witnesses die or have their memories fade; the animosity and uncertainty inherent in litigation will persevere. By recognizing the prospect of there being two or more final judgments in a single action, this new approach will certainly sow confusion over what is or is not a final judgment, not just in this context but in many others, to which I am sure the Court has given no thought. The summary, almost cavalier, treatment of *res judicata* and collateral estoppel, which may be real problems, will surely return to haunt the Court. If all of that were not enough, this new rule of immediate appealability is likely to engender dozens of additional appeals for the Court of Special Appeals, which is in no need of additional work.

Judges RODOWSKY and CATHELL have authorized me to state that they join in this dissenting opinion.